UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                   :
IL PARK,                        :
                 Plaintiff,    :
                        :    10 Civ. 9627 (DLC)
       -v-                  :
                        :    OPINION AND ORDER
THE CITY OF NEW YORK; OFFICER JENNIFER  :
LEMON, Badge #13045; CAPTAIN JAMES MOSES, :
Badge #1622; OFFICER MICHAEL TREMBONE,   :
Badge #12904; MICHAEL HOURIHANE, Warden   :
of Anna M. Kross Center,              :
                        :
                 Defendants.    :
                        :
------------------------------------------X

APPEARANCES:

For the plaintiff:
Il Park, proceeding pro se
# 441-06-15460
Robert N. Davoren Center
11-11 Hazen Street
East Elmhurst, New York 11370

For the defendants:
Jeffrey Scott Dantowitz
Office of the Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

     Plaintiff Il Park ("Park"), proceeding pro se, brings this

action pursuant to 42 U.S.C. § 1983 against The City of New York

("the City"), Officer Jennifer Lemon ("Lemon"), Captain James

Moses ("Moses"), Officer Michael Trembone ("Trembone") and

Warden Michael Hourihane ("Hourihane").  Park alleges that the

defendants violated his constitutional rights by failing to

1

provide him with adequate medical care and failing to correct a hazardous condition at the facility where he was detained.  The defendants have moved to dismiss Park's second amended complaint ("SAC").  For the following reasons, the motion to dismiss is granted.

BACKGROUND

The following facts are taken from the SAC and the documents attached to it, and assumed to be true for the purposes of this motion.  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  During the relevant period, Park was a detainee at the Anna M. Kross Center ("AMKC") on Rikers Island.  Lemon, Moses and Trembone were correctional officers assigned to AMKC.  Hourihane was the warden of AMKC.

On November 30, 2009, Park complained to medical staff at AMKC about foot pain, and he was prescribed ibuprofen for the following four days.  He complained of pain in his heel on December 5 and again saw a doctor.  The doctor's notes suggested that Park was suffering from plantar fasciitis and referred him to a podiatrist.  On December 17, Dr. Allan Goldberg ("Goldberg"), a podiatrist, noted that Park had pain in his heels while wearing unsupportive footwear and indicated that he had plantar fasciitis.  Goldberg recommended that x-rays be

2

taken of both feet and that he be allowed to wear work boots for support.

On January 19, 2010, Dr. Richard ("Richard") completed a consultation request form which stated that Park should be allowed to wear work boots for support, but that he need not be allowed to wear personal footwear.  On January 28, two consultation request forms, one signed by Goldberg and the other by Richard, also permitted him to wear work boots.

After receiving medical permission and before November 1, 2010, Park informed Lemon that he was in need of supportive footwear.  Lemon informed him that he would need to wait to obtain supportive footwear.

On November 1, 2010, Park was informed by Lemon that he was allowed recreational privileges, and he decided to play basketball.  At the time, Park was not wearing supportive footwear.  Park alleges that the basketball court was not level and had cracks and bumps.  While playing basketball, Park tripped and fell on the court.  Trembone assisted Park to the facility's infirmary, where he met Moses.  Park informed Moses that he required supportive footwear and related to him the events that led to his injury.  As a result of the injury, Park's left ankle became swollen and discolored, and the infirmary staff sent him to an urgent care facility, where they took x-rays and issued crutches.  His left foot was also put in

a cast.  Park used the crutches and took pain medication for a
month after the injury.  On December 2, Park again consulted
with medical staff about his need for supportive footwear and
complained about his ankle pain.

Park filed a grievance on December 14, 2010.  In his
grievance, he complained that his November 1 injury was the
result of playing basketball on an unlevel court and with
unsupportive footwear.  In a response dated December 22, the
grievance committee noted that the inmate had been given
supportive footwear some time after the injury, and that
therefore no further action was needed.  On December 23, Park
wrote a letter to Hourihane about his injury and informed him
that he had not been issued supportive footwear before the
injury.  Park asked Hourihane that the condition of the
basketball court be investigated, as it was a health hazard.
Park alleges that "on or around" December 30, he was given
supportive footwear.  On March 25, Park wrote a letter to the
Board of Correction about his November 1 injury, informing it
that despite medical permission to wear supportive footwear,
none had been issued to him prior to his injury, and that
therefore he was seeking monetary damages.


PROCEDURAL HISTORY

Park filed the complaint in this action on December 21,

4

2010, naming the City of New York and several John Doe defendants.  On February 1, 2011, Corporation Counsel for the City of New York ("Corporation Counsel") was ordered to ascertain the identity of the John Doe defendants and provide that information to the plaintiff so that he could amend his complaint.

On May 17, Park filed an amended complaint identifying some of the John Doe defendants and elaborating on his factual allegations.  The defendants filed a motion to dismiss the amended complaint on June 7.  In a letter dated June 22, Park requested leave to amend his complaint again to add defendants about whom he still did not have sufficient information to name, and to supplement his allegations as to the defendants' personal involvement and his hazardous conditions claim.  The defendants did not object to this request.  Therefore, on July 6, the defendants' first motion to dismiss was denied as moot, and Park was given an opportunity to amend his complaint by August 5.  He was informed that this would be his last opportunity to amend his complaint.

Park filed the SAC on August 5.  The defendants filed a motion to dismiss the SAC on August 31, and the motion was fully submitted on October 11.

DISCUSSION

I.   Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citation omitted).   Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Id. at 1950.

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro, 570 F.3d at 475.   Moreover, pleadings filed by pro se plaintiffs are to be construed liberally.   Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).   The rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims.   See Weixel v. Bd. of Ed. of the City of New York, 287 F.3d 138, 146 (2d Cir. 2002).   A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."   Iqbal, 129 S. Ct. at 1949–50.

6

Accordingly, a court may disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Id. at 1940. In determining the adequacy of a complaint "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).[1]

II.  Failure to State a Deliberate Indifference Claim

    A.  Deliberate Indifference to a Serious Medical Condition

    "[A] claim for indifference to the medical needs of . . . a pretrial detainee in state custody, [is] properly brought under the Due Process Clause of the Fourteenth Amendment." Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). "[T]he standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment." Id. at 70.

    Although the "Eighth Amendment imposes a duty upon prison

---

[1]  In his opposition brief, Park urges this Court to follow the guidance in Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002), which advised that "[h]owever unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference." Id. at 186-87. But Phelps goes on to say that "[o]f course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation of deliberate indifference fails as a matter of law." Id. at 187. Park's claims fail as a matter of law, and therefore must be dismissed.

officials to ensure that inmates receive adequate medical care," it is well-established that "not every lapse in medical care is a constitutional wrong." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "Rather, a prison official violates the Eighth Amendment only when two requirements are met." Salahuddin, 467 F.3d at 279 (citation omitted). The first requirement is that the alleged deprivation must be "sufficiently serious." Id. (citation omitted). The second requirement is that "the charged official must act with a sufficiently culpable state of mind." Id. at 280.

     1.   Serious Condition

The first requirement is objective: "[o]nly deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at 279 (citation omitted). Determining whether a deprivation is "sufficiently serious" requires two inquiries. First, a court must determine "whether the prisoner was actually deprived of adequate medical care." Id. "As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." Id. (citing Farmer, 511 U.S. at 844–47). An inmate is not entitled to treatment by every available medical alternative as long as his treatment is reasonable. Estelle v. Gamble, 429 U.S. 97, 107 (1976).

Second, a court must determine "whether the inadequacy in medical care is sufficiently serious." Salahuddin, 467 F.3d at 280. "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (citation omitted). If the inadequacy at issue is "a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." Id. If, however, "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." Id. Then, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003). "[T]he actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Id. at 187.

"Because the objective component of an Eighth Amendment claim is necessarily contextual and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." Id. at 185 (citation omitted). Courts use a number of factors to determine whether a medical

9

condition is serious, including: "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Salahuddin, 467 F.3d at 280 (citation omitted).  In considering a plaintiff's pain, courts do not "require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor . . . that his or her condition will degenerate into a life-threatening one."  Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003).  The pain must be more, however, than an annoyance.  Id.

The subject of Park's SAC is that he was deprived of supportive footwear between January and December 2010 which could alleviate the foot pain caused by his plantar fasciitis. In the context of approximately twelve months without treatment, the appropriate inquiry is whether Park's underlying medical condition was "sufficiently serious."  Salahuddin, 467 F.3d at 280.  Although the notes of Park's doctors certainly found his condition worthy of comment and recommended treatment, nothing in these notes, or in any of Park's allegations, indicate that his condition significantly affected his daily activities or caused chronic or substantial pain.  Even after he was diagnosed with plantar fasciitis and deprived of supportive footwear for months, Park was sufficiently uninhibited by his condition to

10

engage in recreational activities such as basketball, which requires demanding use of one's feet.[2]

Although the Second Circuit has not yet had an opportunity to speak to plantar fasciitis in this context, the district court in this Circuit which has considered this condition did not find that a failure to treat it constituted a sufficient deprivation to form the basis of a constitutional violation. Kemp v. Wright, No. 01-cv-562(JG), 2005 WL 893571 at *5 (E.D.N.Y. Apr. 19, 2005). Similarly, cases in which prisoners have complained of other types of foot pain have found this to be insufficiently serious to state a § 1983 claim. See, e.g., Hernandez v. Goord, No. 02 Civ. 1704 (DAB), 2006 WL 2109432, at *6 (S.D.N.Y. July 28, 2006) (foot condition made walking more difficult); Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (foot condition required surgical intervention).

In his opposition, Park does not explain how his medical condition could be considered "sufficiently serious" to form the basis of a § 1983 claim. Therefore, on this prong alone, his deliberate indifference to his medical care claim can be

---

[2]    There is nothing to suggest that Park also intended to base his deliberate indifference claim on the injury he sustained on November 1, 2010, which involved the swelling and discoloration of his ankle and subsequent treatment with pain medication, a cast, and crutches. But even if he had intended to include this as a claim, the ample references to the immediate medical treatment he received after the injury do not allow for an inference that Park suffered from a constitutionally deficient standard of care.

dismissed.

        2.   Subjective Element

The second requirement for an Eighth Amendment violation is subjective: the prison official must act with a "sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280 (citation omitted); see also Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin, 467 F.3d at 280 (citation omitted). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (citation omitted). This means that the prison official "must be subjectively aware that his conduct creates such a risk." Id. at 281 (citation omitted).

Park makes no allegation that suggests that any of the defendants failed to provide him with supportive footwear while actually aware of a substantial risk that serious harm could befall him. First, there is no reason to believe that there was any risk that serious harm could befall Park as a result of a lack of supportive footwear. After all, after nearly a year without such footwear, Park was still able to be active enough on his feet that he decided to play basketball the day of his injury. Nothing in the notes of the doctors who treated Park indicate that a lack of supportive footwear would create a risk

of serious harm, merely that it could alleviate some pain in his heels.

Even if there were such a risk of serious harm to Park, there is nothing to show that the defendants would be aware of it.  Only one defendant, Lemon, is alleged to have been aware of his request for supportive footwear prior to his injury.  Park does not allege that Lemon was aware of the medical reason for his supportive footwear, that she has any personal medical training that would provide her with that information, that she read the notes of or spoke to the doctors who treated him, or that Park informed her of any risk that he might suffer harm without supportive footwear.  Similarly, there is no allegation that Moses, who Park informed after his injury that he had been denied medically recommended supportive footwear, was aware of any substantial risk of serious harm that could befall him. Park makes no allegation that Trembone was made aware at any time that Park had been denied supportive footwear.  Hourihane did not know of Park's condition until his letter dated December 23, 2010, which was either after or right around the time when Park received supportive footwear.  Park's conclusory contentions in his opposition to the contrary, he has not made sufficient allegations to satisfy the subjective element of his deliberate indifference to his medical care claim as to any of the defendants.

B.   Deliberate Indifference to a Hazardous Condition

A claim of deliberate indifference to a hazardous condition in a prison is analyzed in the same manner as a claim of deliberate indifference to a serious medical condition.  To allege a proper claim, an inmate must state that (1) he suffered "a deprivation that is objectively, sufficiently serious [and] that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety."  Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001).

Although an inmate's constitutional protections do "not mandate comfortable prisons, the conditions of confinement must be at least humane."  Id. (citation omitted).  Thus, the Second Circuit has found that an inmate can state a claim for exposure to friable asbestos exposed to the air, LaBounty v. Coughlin, 137 F.3d 68, 72-73 (2d Cir. 1998), and prolonged exposure to bitter cold, Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir. 1988).  The Supreme Court has found that an inmate stated a § 1983 claim for prolonged exposure to second hand smoke.  Helling v. McKinney, 509 U.S. 25, 32-36 (1993).

Park's claim that the basketball court at the AMKC was not level and marred by cracks and bumps, does not implicate a deprivation of "the minimal civilized measure of life's

14

necessities." His allegations suggest that he was deprived of the opportunity to engage in recreational facilities on a level surface. This is not an inhumane condition. Although Park makes the conclusory argument that the condition of the basketball court posed a "great risk" to "his health and or safety," he has cited to no authority that suboptimal recreational facilities rise to the level of a hazardous condition violative of inmates' constitutional rights.[3]

III. Personal Involvement

Most of Park's claims should also be dismissed because he has failed to allege the personal involvement of the defendants in the alleged constitutional violations. Section 1983 provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

42 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." Zherka v. Amicone, 634 F.3d 642, 644

---

[3]   Park also fails to allege the subjective element required for a deliberate indifference to a hazardous prison condition claim with regard to, at a minimum, Lemon. Nothing in the SAC suggests that Lemon was aware of the condition of the basketball court either before or after Park's injury.

15

(2d Cir. 2011) (citation omitted).  A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights. Martinez v. California, 444 U.S. 277, 285 (1980).  It is "well settled" that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted).  Moreover, on claims of deliberate indifference, a plaintiff must show such indifference on the part of a "particular defendant."  Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

Park has not alleged that Trembone and Moses had any part in the denial of supportive footwear or in any decision to not address the condition of the AMKC basketball court.  Neither defendant had any role in the events underlying the claims in the SAC until after Park's November 1 injury, and they are not alleged to have any control over the conditions of Park's footwear or the facilities at AMKC.  Similarly, Park has not alleged that Lemon had any personal involvement in the condition of the basketball court.

Finally, Park has not asserted the personal involvement of Hourihane, who supervised the other individual defendants, in his deliberate indifference to a serious medical condition claim.  "[T]he doctrine of respondeat superior . . . does not

16

suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).  The personal involvement and liability of supervisory personnel is established when the supervisory official has "actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) (citation omitted).  Thus, a plaintiff may establish a supervisor's personal involvement by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 127 (2d Cir. 2004) (citation omitted).[4]  Furthermore,

---

[4]     The Supreme Court's decision in Iqbal, 129 S. Ct. 1937, which found that a supervisor can be held liable only "through the official's own individual actions," id. at 1948, arguably casts doubt on the continued viability of some of the categories set forth in Hastings on Hudson.  See Qasem v. Toro, No. 09 Civ. 8361(HHS), 2010 WL 3156031, at *3 (S.D.N.Y. Aug. 10, 2010) ("The Second Circuit has not yet addressed how Iqbal affects the five categories of conduct that give rise to supervisory liability . . . .").  For the purposes of this case, however, it is not

> [A]fter the fact notice of a violation of an
> [individual's] right is insufficient to establish a
> supervisor's liability for the violation.  Receiving
> post hoc notice does not constitute personal
> involvement in the unconstitutional activity and
> cannot be said to have proximately caused the
> [constitutional violation] suffered by the inmate.

Rahman v. Fischer, No. 09 Civ. 4368(DLC), 2010 WL 1063835, at *4
(S.D.N.Y. Mar. 22, 2010) (citation omitted).

Park does not allege that Hourihane was personally involved in the denial of supportive footwear or that he was informed of a violation that he then failed to remedy.  Either at the time Park first contacted Hourihane about his complaint or a few days thereafter, Park was provided supportive footwear.  To the extent that this claim rests on allegations that Hourihane failed to respond or investigate Park's grievance, it therefore must be dismissed.

On the other hand, if Park had stated valid deliberate indifference claims, the SAC, construed liberally, sets out facts that Lemon was personally involved in the denial of unsupportive footwear and that Hourihane was given notice of the condition of the basketball court and took no action to correct it.  Accordingly, all of Park's claims against the individual defendants, other than his medical condition claim against Lemon and his hazardous condition claim against Hourihane, are also

---

necessary to explore this issue because the complaint fails to
plead Hourihane's personal involvement under any of the Hastings
on Hudson categories.

dismissed for failure to allege personal involvement.

IV.  Municipal Liability

"Section 1983 'imposes liability on a government that,
under color of some official policy, causes an employee to
violate another's constitutional rights.'"  Okin v. Village of
Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir.
2009) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692
(1978)).  "The word 'policy' generally implies a course of
action consciously chosen from among various alternatives.
Policy, in the Monell sense, may of course be made by the
municipality's legislative body, but it also may be made by a
municipal official possessing final authority to establish
municipal policy with respect to the action ordered."  Vives v.
City of New York, 524 F.3d 346, 350 (2d Cir. 2008) (citation
omitted).

The SAC includes no allegations that the City had any
official policy or set course of action that caused any of the
individual defendants to violate Park's constitutional rights.
Appended to Park's complaint is a copy of the Department of
Correction's policy on inmate footwear which provides that
inmates are issued departmental footwear and are not allowed to
keep personal footwear.  But nothing in this policy would

prevent the issuance of supportive footwear recommended by medical staff to Park, and Park does not allege that he was denied such footwear as a result of the policy.  Park does not even allude to a City policy in connection with his hazardous conditions claim.  Therefore, even if Park had stated claims of deliberate indifference, he has not established any basis for holding the City liable.[5]


CONCLUSION

The defendants' August 31, 2011 motion to dismiss is granted.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  The Clerk of the Court shall close the case.

Dated:     New York, New York
           November 22, 2011


_____
DENISE COTE
United States District Judge

---

[5]     The defendants also asserted defenses of qualified immunity and that Park had failed to administratively exhaust his claims. Because Park has failed to state a claim, assert a basis for municipal liability, or -- with regard to most claims and most defendants -- allege personal involvement, these alternative defenses need not be addressed.

Copies sent to:

Il Park                             Jeffrey S. Dantowitz
441-06-15460                        City of New York Law Department
RNDC                                100 Church Street
11-11 Hazen Street                  New York, NY 10007
East Elmhurst, NY 11370